**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────────

**UNITED STATES OF AMERICA,**                    **12 Cr. 269 (JGK)**

                    **- against -**                    **OPINION AND ORDER**

**CARLOS SALOMON-MENDEZ and OSVALDO**
**RIVERA-RODRIGUEZ,**

                              **Defendants.**

────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

     The defendants in this case—Carlos Salomon-Mendez and
Osvaldo Rivera-Rodriguez—have been charged in a five-count
Superseding Indictment with robbery and conspiracy to commit
robbery in violation of 18 U.S.C. §§ 1951 and 2; with using and
carrying a firearm during and in relation to the robbery and
robbery conspiracy, and possessing a firearm in furtherance of
those crimes, in violation of 18 U.S.C. §§ 924(c) and 2; and
with conspiracy in violation of 21 U.S.C. § 846 to distribute
cocaine in violation of 21 U.S.C. §§ 841(a) and (b)(1)(A).  Both
defendants have moved for a pre-trial hearing to determine
whether an in-court identification should be suppressed pursuant
to the principles announced in Manson v. Brathwaite, 432 U.S. 98
(1977).  Defendant Rivera-Rodriguez has filed a motion to
suppress evidence obtained during a warrantless search of his
car, and a motion for the Court to sever his trial from that of
his co-defendant pursuant to Rule 14 of the Federal Rules of

Criminal Procedure.  Defendant Salomon-Mendez has moved to exclude evidence of an arrest that the government indicated it would seek to introduce at trial under Rule 404(b) of the Federal Rules of Evidence.

I.

Both defendants have moved for a pre-trial hearing to determine whether in-court identifications should be suppressed. For the reasons that follow, both defendants' motions are denied.

A.

Neither counsel for either defendant was present at the pre-trial identifications at issue in these motions.  In a memorandum dated January 22, 2013, the government represented that the identification procedure used in this case with respect to both defendants was for a law enforcement officer seated next to an identifying witness to show a series of individual photographs to the witness, one at a time.  In the same memorandum, the government represented that the photos used in the identification of Rivera-Rodriguez were available to Rivera-Rodriguez's counsel for inspection at the United States Attorney's Office.  The government also provided these photos directly to counsel for Rivera-Rodriguez on November 4, 2013.

(Hr'g Tr. 15.)  At a hearing held on November 5, 2013, the
government indicated that no record had been kept of the photos
shown during the identification of Salomon-Mendez.  (Hr'g Tr.
20.)  The government does not seek to introduce any pre-trial
identifications at trial; rather, it will rely solely on in-
court identifications.


                                B.

     The admissibility at trial of identification testimony can
be challenged on due process grounds when there is a "very
substantial likelihood of irreparable misidentification."
Manson, 432 U.S. at 116 (quoting Simmons v. United States, 390
U.S. 377, 384 (1968)).  Undue suggestiveness alone does not
require that identification testimony be excluded.  Nieves v.
New York, No. 97 Civ. 2121, 1998 WL 599716, at *4 (S.D.N.Y.
Sept. 10, 1998) (citing Neil v. Biggers, 409 U.S. 188, 198-99
(1972)).  Rather, a two-step inquiry into the permissibility of
the testimony is required.  Id. (citing Sims v. Sullivan, 867
F.2d 142, 145 (2d Cir. 1987); Styers v. Smith, 659 F.2d 293, 297
(2d Cir. 1981)).  "The court must first determine whether the
pretrial identification procedures unduly and unnecessarily
suggested that the defendant was the perpetrator."  Raheem v.
Kelly, 257 F.3d 122, 133 (2d Cir. 2001).  The suggestiveness of
an out-of-court identification based on photos depends upon

                                3

factors such as the number of photos presented to the identifying witness, the manner of presentation by the officers present, and the contents of the photos.  See United States v. Concepcion, 983 F.2d 369, 377 (2d Cir. 1992); see also United States v. Bautista, 23 F.3d 726, 731 (2d Cir. 1994) (evaluating the suggestiveness of both the photo array used in the identification and the procedures used to present the array to the witness).  If after evaluating these factors a court finds that the procedures and the photos used were not suggestive, there is no due process obstacle to admissibility of the identification testimony, and no further inquiry is required. Raheem, 257 F.3d at 133.

On the other hand, "[i]f pretrial procedures have been unduly suggestive, the court must determine whether an in-court identification will be the product of the suggestive procedures or whether instead it is independently reliable."  Concepcion, 983 F.2d at 377.  Factors relevant to independent reliability, which are to be considered in light of the totality of the circumstances, include: "the opportunity of the witness to view the perpetrator at the time of the crime; the witness' degree of attention; the accuracy of the witness' prior description of the accused; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and confrontation."  Moreno v. Kelly, No. 95 Civ. 1546, 1997 WL

4

109526, at *9 (S.D.N.Y. Mar. 11, 1997) (citing Neil, 409 U.S. at 199).  In sum, then, identification evidence is admissible if "(a) the procedures were not suggestive or (b) the identification has independent reliability."  Raheem, 257 F.3d at 133 (citations omitted).

A pre-trial hearing on the reliability of identification evidence is not required.  United States v. Archibald, 734 F.2d 938, 940 (2d Cir. 1984) (citing Watkins v. Sowders, 449 U.S. 341, 346-47 (1981)).  Rather, to be entitled to such a hearing, the defendant must make a threshold showing that he is entitled to the relief he seeks.  See United States v. Berganza, No. 03 Cr. 987, 2005 WL 372045, at *10 (S.D.N.Y. Feb. 16, 2005) ("[The defendant] must allege facts supporting his contention that the identification procedures used were impermissibly suggestive."). "In the absence of a sufficient pre-trial showing of impropriety, exploration of the circumstances surrounding the identification procedures may be properly left to cross-examination at trial."  United States v. Padilla, No. 94 Cr. 313, 1994 WL 681812, at *8 (S.D.N.Y. Dec. 5, 1994).

Here, neither defendant has been able to make any specific allegations that the identification procedures were suggestive. Rather, counsel for Rivera-Rodriguez asserts that the defendants should receive a pre-trial hearing because neither the defendants nor their counsel were present at the pre-trial

identifications, and they are therefore unable to know whether the procedures used were improper without a hearing on the matter.  This argument is wholly unsupported by the relevant cases, which clearly require some factual showing of suggestiveness before a hearing is called for.  See Padilla, 1994 WL 681812, at *8 ("[The defendant's] contention is that because the circumstances [of the photo identification] are unknown, a hearing must be held to determine if there was any impropriety.  Thus, he makes no specific allegation of impropriety. . . . [T]hese speculations are insufficient to warrant a pre-trial hearing on the identification evidence.").

At the November 5 hearing, Rivera-Rodriguez asserted that the photos used during his identification were themselves suggestive, and that he was entitled to a pre-trial identification hearing on the basis of this apparent suggestiveness.  (Hr'g Tr. 20.)  He argued that the photos were suggestive because he was the only person depicted in the array with a full beard and "medium length curly hair," and because he was the oldest person pictured.  (Hr'g Tr. 20.)  Upon reviewing the photographs produced by the government, the Court finds no indication of suggestiveness.  Each photo is a frontal depiction of a male face against a blue, light-blue, or green background, and all individuals pictured are of approximately similar age, skin color, and appearance.  Many have some form of facial hair.

6

Some have short hair or bald heads, others have medium-length or long hair. And there is no indication that Rivera-Rodriguez differs in age from the other individuals pictured. Thus, the differences among the photos would "hardly suggest to an identifying witness that [the defendant] was more likely to be the culprit." Bautista, 23 F.3d at 731 (alteration in original) (quoting Archibald, 734 F.2d at 940); see also United States v. Douglas, 525 F.3d 225, 243 (2d Cir. 2008); Bautista, 23 F.3d at 731. Having failed to make a threshold showing of suggestiveness, Rivera-Rodriguez is therefore not entitled to a pre-trial identification hearing.

Salomon-Mendez has joined Rivera-Rodriguez's motion for a pre-trial identification hearing, but he has not proffered any facts indicating that his identification was suggestive, and his motion for a pre-trial identification hearing is therefore similarly without merit. The government has represented that the photos used during the identification of Salomon-Mendez have not been preserved, but Salomon-Mendez has not alleged that there was any bad faith involved in the government's failure to preserve the photos used in his case, and this factor therefore has no bearing on the analysis applied here. See United States v. Stanley, No. 09 Cr. 0141, at *7-8 (E.D.N.Y. Dec. 1, 2009) ("[I]t is well-settled that 'unless a criminal defendant can show bad faith on the part of the police, failure to preserve

potentially useful evidence does not constitute a denial of due process of law.'" (quoting <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988); <u>Sales v. Harris</u>, 675 F.2d 532, 538 n.3 (2d Cir. 1982); <u>United States v. Williams</u>, 575 F.2d 388, 393 (2d Cir. 1978))), <u>adopted by</u> 2009 WL 5066864, at *1 (E.D.N.Y. Dec. 22, 2009).

Both defendants' motions for a pre-trial identification hearing should be denied for the additional reason that the government has made a sufficient showing that the in-court identifications it seeks to have admitted at trial are independently reliable.  At the November 5 hearing, the government represented that its identifying witness has had a protracted relationship with both defendants based on participation with them in multiple robberies.  (Hr'g Tr. 14, 16, 21.)  Such prior dealings provide a strong basis for the independent reliability of an in-court identification.  <u>See, e.g.</u>, <u>United States v. Argentina</u>, 173 F. App'x 90, 94 (2d Cir. 2006) (summary order) ("Even brief glimpses and short conversations may support a finding of independent reliability of an identification."); <u>United States v. Morissett</u>, 49 F. App'x 334, 339 (2d Cir. 2002) (summary order) (affirming a finding of independent reliability based on the identifying wintess's "numerous protracted encounters [with the defendant] under emotionally charged circumstances").  The government's proffer

8

of independent reliability is therefore an independent reason for denying the defendants' motions for a pre-trial identification hearing.  See Berganza, 2005 WL 372045, at *10 ("The government . . . posits that any witness whose in-court identification the government offers at trial will have had an ongoing narcotics-related relationship with [the defendant] . . . .  The government's representations to the Court make it clear that it is not necessary for the Court to hold a [pre-trial identification] hearing at this time." (internal quotation marks omitted)).

For these reasons, both defendants' motions for pre-trial identification hearings are denied.  The government has suggested that an identification hearing can be held during trial if necessary.  Therefore, the defendants may raise this issue again at trial, or at the final pre-trial conference.


II.

Rivera-Rodriguez has moved to suppress evidence seized during a warrantless search of his car, arguing that the search violated his rights under the Fourth Amendment.

The Court held an evidentiary hearing on November 5, 2013, to determine the facts in connection with the motion to suppress the evidence seized from Rivera-Rodriguez's car.  Based on the evidence presented at the hearing, and having considered the

9

credibility of DEA Special Agent Joseph Mercurio, the only witness at the hearing, the Court makes the following findings of fact and reaches the following conclusions of law.

### A.

Agent Mercurio has participated in hundreds of arrests. (Hr'g Tr. 23.)

In February 2012, Agent Mercurio participated in the arrest of Rivera-Rodriguez in Paterson, New Jersey.  (Hr'g Tr. 24.) Agent Mercurio and other DEA agents arrived in the vicinity of Rivera-Rodriguez's residence at about 8:00am and began conducting surveillance.  (Hr'g Tr. 24, 52.)  A few hours after Agent Mercurio arrived, he observed Rivera-Rodriguez exit his home and walk toward a gold Toyota Sienna that was parked about five or six homes away from Rivera-Rodriguez's residence.  (Hr'g Tr. 24-25.)  Agent Mercurio and other agents approached Rivera-Rodriguez and announced themselves as law enforcement agents. (Hr'g Tr. 25.)  As Rivera-Rodriguez was attempting to enter the vehicle, while the door was open, the agents arrested him. (Hr'g Tr. 25, 44.)  Rivera-Rodriguez was handcuffed, moved to a position in front of his vehicle, and then placed in a police vehicle.  (Hr'g Tr. 45.)

Agent Mercurio entered the Sienna within five minutes of Rivera-Rodriguez's arrest, and searched it.  (Hr'g Tr. 25, 46.)

He did so because he believed the car would contain evidence of prior crimes. (Tr. 25.) When Agent Mercurio searched the Sienna, he found the following items in the glove compartment: (1) a warning notice from the Ohio State Police; (2) six or seven photographs of the Sienna; and (3) a piece of paper stating that Pedro Guzman was authorized to use license plates from Florida. (Hr'g Tr. 29, 46-47.)

Agent Mercurio testified that he believed there would be evidence in the car for several reasons. A cooperating witness had previously informed investigating agents that a gold Toyota Sienna that belonged to Rivera-Rodriguez, a white Honda Odyssey belonging to Carlos Salomon-Mendez, and the cooperator's vehicle were stopped en route to Chicago by the Ohio police. (Hr'g Tr. 25-26.) The purpose of the trip was to rob a drug dealer. (Hr'g Tr. 26.) The trip occurred in September 2011. (Hr'g Tr. 42.)

The cooperating witness had also informed investigating agents that the Toyota Sienna was used in a robbery of a parking garage in Manhattan in August 2011. (Hr'g Tr. 28.) The cooperating witness said that Rivera-Rodriguez and Salomon-Mendez were involved in that robbery. (Hr'g Tr. 28.) Agent Mercurio had reviewed a surveillance video from the August robbery and saw that a Toyota Sienna van was involved in that robbery. (Hr'g Tr. 28.) When reviewing the surveillance

footage, Agent Mercurio saw two individuals get out of the Sienna—one had a gun and took the garage attendant into the back, while the other searched the office.  (Hr'g Tr. 28.)

Earlier in the morning of Rivera-Rodriguez's arrest, at about 2:00 or 3:00am, agents arrested Guzman—an individual who had been involved in the parking garage robbery and the attempted robbery involving the caravan of cars that were stopped by the police in Ohio.  (Hr'g Tr. 28-29.)  From Guzman's wallet, Agent Mercurio recovered a warning notice from the officer who had stopped Guzman in Ohio.  (Hr'g Tr. 29.)

Agent Mercurio intended to have the Sienna impounded. (Hr'g Tr. 29, 50.)  He contacted the local Paterson Police Department, but they never came to pick up the car.  (Hr'g Tr. 30, 50.)  Agent Mercurio then asked Rivera-Rodriguez who should receive the keys to the car, and Rivera-Rodriguez told Agent Mercurio to give the keys to Rivera-Rodriguez's wife.  (Hr'g Tr. 30.)  Agent Mercurio claimed that the agents were going to do an inventory search before the car was impounded.  (Hr'g Tr. 30.) The car was never impounded.  (Hr'g Tr. 30.)

Rivera-Rodriguez did not tell the agents not to search the car, but there is no contention that Rivera-Rodriguez consented to the search.  (Hr'g Tr. 30-31.)

B.

Warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-recognized exceptions."  Katz v. United States, 389 U.S. 347, 357 (1967) (internal citations omitted); see also Terry v. Ohio, 392 U.S. 1, 20 (1968); United States v. Scopo, 19 F.3d 777, 782 (2d Cir. 1994).  Pursuant to the "automobile exception" to the Fourth Amendment warrant requirement, police may search a movable vehicle if "there is probable cause to believe [the] vehicle contains evidence of criminal activity." Arizona v. Gant, 556 U.S. 332, 346-47, 351 (2009) (citations omitted); see also United States v. Gagnon, 373 F.3d 230, 235 (2d Cir. 2004); United States v. Gaskin, 364 F.3d 438, 456 (2d Cir. 2004).[1]  "Furthermore, when the police possess probable cause to believe a vehicle contains contraband, they may conduct a warrantless search of every part of the vehicle and its contents, including all containers and packages in the vehicle." Gagnon, 373 F.3d at 235 (internal citation and quotation marks omitted).

Probable cause exists "where the facts and circumstances within . . . [an officer's] knowledge and of which [the officer]

---

[1] Following the evidentiary hearing, the government has not relied on any contention that the search was permissible as a search incident to arrest, or that the evidence seized was in plain view.  See Gant, 556 U.S. at 351.

had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that evidence of a crime will be found in the place to be searched." Gaskin, 364 F.3d at 456 (third alteration in original) (internal citation and quotation marks omitted); see also Gagnon, 373 F.3d at 236. The standard does not demand certainty, but only a "fair probability" that contraband or evidence of a crime will be found. Gaskin, 364 F.3d at 457 (citation omitted). Probable cause is judged through the eyes of a reasonable and cautious police officer on the scene, guided by experience and training. Id. In assessing probable cause based on information provided in whole or in part by a confidential informant, a court should consider the informant's veracity, reliability, and basis for knowledge, as well as whether the information is corroborated by independent police investigation. Gagnon, 373 F.3d at 235; see also Morales, No. 05 Cr. 495, 2006 WL 2380393, at *4 (S.D.N.Y. Aug. 11, 2006).

1.

The information in Agent Mercurio's possession at the time of the search was sufficient to provide probable cause to search Rivera-Rodriguez's car for evidence of the crimes with which he has been charged. As explained above, prior to the search, Agent Mercurio had been informed by a cooperating witness that a

gold Toyota Sienna had been used during the robbery of a parking
garage in Manhattan in August 2011.  This information was
corroborated by video surveillance footage from the garage taken
during the robbery.  The cooperating witness had also informed
Agent Mercurio that the Sienna was among three vehicles that
were stopped by a police officer in Ohio while their occupants
were en route from New York to Chicago to commit a separate
robbery.  This was corroborated when, upon arresting Guzman—an
individual suspected of having participated in the parking
garage robbery and the attempted robbery in Chicago—officers
found a warning notice from the Ohio State Police in his wallet.

In the aggregate, this information provided probable cause
that the Sienna had been used in the commission of multiple
suspected crimes, and that information relating to its ownership
was evidence to be used in the prosecution of those crimes.
There was therefore probable cause to search the car for
evidence of the crimes in which it was involved.  See United
States v. Rijo, 502 F. App'x 103, 105 (2d Cir. 2012) (summary
order); United States v. Pender, 554 F. Supp. 2d 289, 296
(N.D.N.Y. 2008), aff'd, United States v. Hightower, 376 F. App'x
60, 63 (2d Cir. 2010) (summary order); Morales, 2006 WL 2380393,
at *5; United States v. Aristizabal, No. 93 Cr. 0424, 1993 WL
262714, at *6 (E.D.N.Y. June 25, 1993).  Accordingly, the search
was valid under the well-recognized "automobile exception" to

the warrant requirement, which permits officers to search a
vehicle without a warrant when "there is probable cause to
believe [the] vehicle contains evidence of criminal activity."
Gant, 556 U.S. at 347 (citation omitted).


2.

Rivera-Rodriguez argues that by the time the car was
searched in February 2012, the information in Agent Mercurio's
possession was stale—thus, even if probable cause existed at
some point, it did not exist at the time of the search, and
there was therefore no valid basis for searching the Sienna.

The Court of Appeals for the Second Circuit has emphasized
that "[w]hile there is no bright line rule for staleness, the
facts in an affidavit supporting a search warrant must be
sufficiently close in time to the issuance of the warrant and
the subsequent search conducted so that probable cause can be
said to exist as of the time of the search and not simply as of
some time in the past."[2]  United States v. Wagner, 989 F.2d 69,

---

[2] The rules governing staleness were developed in cases assessing
the facts alleged in affidavits supporting search warrants.  In
warrantless car search cases, "a search is not unreasonable if
based on facts that would justify the issuance of a warrant,
even though a warrant has not actually been obtained."  United
States v. Ross, 456 U.S. 798, 809 (1982).  Accordingly, the
staleness cases relating to obtaining a warrant are relevant to
determining whether probable cause existed at the time of a
warrantless car search.  Cf. United States v. Tramunti, 513 F.2d
1087, 1101 n.19 (2d Cir. 1975) (addressing staleness in the

75 (2d Cir. 1993) (citations omitted).  The Court of Appeals has identified a number of factors relevant to a staleness inquiry, including: "[t]he currency and specificity of the information forming the basis" for probable cause, "the reliability of the sources of information, the nature of the alleged illegal activity, the duration of that activity in the location in question, and the nature of the evidence being sought."  United States v. McGrath, 622 F.2d 36, 41-42 (2d Cir. 1980) (citations omitted); see also United States v. Paul, 692 F. Supp. 186, 191 (S.D.N.Y. 1988).  The ultimate question to be resolved is whether it is reasonable to believe that the evidence sought is still in the location where it is sought, or "whether so long a period of time ha[s] passed as to make it doubtful that the [evidence i]s still there."  United States v. Beltempo, 675 F.2d 472, 477 (2d Cir. 1982) (citations omitted); see also Paul, 692 F. Supp. at 191.

Central to the staleness question in this case is "the nature of the property sought" and its relationship to the location in which it was sought.  Paul, 692 F. Supp. at 193. Courts have emphasized that "[i]f the property sought is the type which can be expected to remain in one location over a period of time, . . . probable cause reasonably continues to

context of a warrantless arrest); Travis v. Vill. of Dobbs Ferry, 355 F. Supp. 2d 740, 749 (S.D.N.Y. 2005) (same).

exist over a more extended period of time." Id. (collecting
cases).  In this regard, courts tend to distinguish between
personal property that is moveable or likely to dissipate over
time, such as drugs or cash, and property of a more permanent
nature that is likely to be maintained in one place for longer
periods of time, such as business records.  See, e.g., United
States v. LaMorte, 744 F. Supp. 573, 576 (S.D.N.Y. 1990)
("Unlike drugs or cash, records of past activity are likely to
be maintained over time . . . ."); Paul, 692 F. Supp. at 193
("While it is reasonable to infer that an individual like [the
defendant] would keep bank statements, safe deposit box
information or keys and other financial records or instruments
in his house over an extended period of time, it is not
reasonable to infer that he would keep the $5000 cash proceeds
of his illegal extortionate behavior for over five months in one
place.").

Under the "automobile exception" to the warrant
requirement, Agent Mercurio was justified in searching Rivera-
Rodriguez's vehicle if he had probable cause to believe it
contained evidence of criminal activity.  Gant, 556 U.S. at 347.
Agent Mercurio had probable cause to believe that the Sienna had
been used in a robbery and an attempted robbery, and evidence of
the vehicle's ownership, which would link the Sienna to the
defendant, would be evidence that could be used in the

18

prosecution of the defendant.  See, e.g., United States v. Ochs, 595 F.2d 1247, 1258 (2d Cir. 1979) ("[P]robable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction."); United States v. Giampa, No. 92 Cr. 437, 1992 WL 249885, at *5 (S.D.N.Y. Sept. 23, 1992) (finding that probable cause existed where the evidence sought served to connect the defendant with a suspected criminal enterprise).

Agent Mercurio would have been reasonable in concluding that such documents are usually kept in cars, and that it was therefore probable that relevant evidence in this case would be found in the Sienna.  Because this sort of document is unlikely to be removed from a car at any point when the car is still in use, the passage of a few months[3] between the criminal activity in question and the warrantless search at issue here is irrelevant.  Accordingly, the basis for the car search was not stale, and the search was therefore valid under the "automobile exception" to the warrant requirement.[4]

---

[3] The alleged robbery of the parking garage occurred in August 2011; the alleged trip to Ohio occurred in September 2011; and the car search occurred in February 2012.  Accordingly, approximately five months had elapsed between the alleged criminal activity and the search in question here.

[4] The defendant has argued that the "automobile exception" should be limited to searches for contraband, but the exception applies to searches for "evidence of criminal activity," Gant, 556 U.S.

3.

Rivera-Rodriguez also argues that the "automobile exception" did not justify the search of his car because the rationale underlying the exception—namely, the inherent mobility of vehicles—is inapplicable here.  The defendant argues that because the agents had time to procure a warrant to search the car, they should not be able to rely on the "automobile exception" to the warrant requirement.

This position is incorrect, because it ignores the well-established principle that "the mobility rationale [for the 'automobile exception'] does not turn on case-by-case determinations by agents in the field regarding either the probability that a vehicle could be mobilized or the speed with which movement could be achieved.  Rather, whether a vehicle is readily mobile within the meaning of the automobile exception has more to do with the inherent mobility of the vehicle . . . ."  United States v. Navas, 597 F.3d 492, 498 (2d Cir. 2010) (citation and internal quotation marks omitted); see also Aristizabal, 1993 WL 262714, at *6 (applying the automobile exception where a vehicle was parked and locked).  Indeed, the Court of Appeals for the Second Circuit has specifically

at 347, and not merely contraband.  See Gaskin, 364 F.3d at 456 (noting that the "automobile exception" applies if there is probable cause to believe a vehicle contains "contraband or other evidence of a crime").

rejected the argument that the "automobile exception" ceases to apply if law enforcement agents had time to obtain a warrant: "within the context of the automobile exception, a reasonable search does not become unreasonable because law enforcement officials lacked a warrant." United States v. Howard, 489 F.3d 484, 495 (2d Cir. 2007).

Moreover, "[i]n addition to the mobility rationale, . . . warrantless searches pursuant to the automobile exception are also reasonable because citizens possess a reduced expectation of privacy in their vehicles." Navas, 597 F.3d at 497 (citation omitted). Thus, "[a] warrantless search of a motor vehicle parked in a public place is permissible, with or without exigent circumstances, provided the searching authorities have probable cause to [search the vehicle]." Aristizabal, 1993 WL 262714, at *6 (citations omitted).

For these reasons, it is of no consequence that Rivera-Rodriguez's car was parked when it was searched, or that the agents may have had time to procure a warrant before searching it. Rivera-Rodriguez proffers no basis for concluding that the Sienna was anything but "readily mobile within the meaning of the automobile exception," Navas, 597 F.3d at 498 (internal quotation marks omitted), and Agent Mercurio was therefore justified in searching it without a warrant on the basis of

probable cause to believe it contained evidence of criminal activity.[5]

    Therefore, Rivera-Rodriguez's motion to suppress the evidence seized from the Sienna is denied.

III.

    In a letter dated January 9, 2014, counsel for Salomon-Mendez informed the Court that the government had indicated its intention to introduce evidence at trial pertaining to an arrest of Salomon-Mendez in New Jersey for possession of a controlled substance with intent to distribute.  Salomon-Mendez has moved to exclude this evidence.  However, in a letter dated January 16, 2014, the government stated that it no longer seeks to introduce this evidence.  Accordingly, Salomon-Mendez's motion is denied as moot.

    Upon learning of the government's intention to introduce evidence of Salomon-Mendez's New Jersey arrest, Rivera-Rodriguez moved to have his case severed from that of his co-defendant pursuant to Rule 14 of the Federal Rules of Criminal Procedure. The sole basis for this motion was the prejudicial effect that

---

[5] It is unnecessary to reach the government's alternative argument that the evidence would have been inevitably discovered pursuant to an inventory search.

evidence of Salomon-Mendez's arrest may have had on Rivera-Rodriguez, who had no involvement in the events leading to the arrest.  Given that the government no longer seeks to have this evidence admitted, Rivera-Rodriguez's motion to sever must also be denied as moot.


                            CONCLUSION

     The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed above, the remaining arguments are either moot or without merit.  For the reasons explained above, both defendants' motions for a pre-trial identification hearing are **denied without prejudice to the defendants' ability to raise this issue again at trial, or at the final pre-trial conference**.  Rivera-Rodriguez's motion to suppress evidence seized during the search of the Toyota Sienna is **denied**.  Salomon-Mendez's motion to exclude evidence pertaining to his New Jersey arrest is **denied as moot**, and Rivera-Rodriguez's motion to sever is **denied as moot**.  The Clerk is directed to **close Docket Nos. 74 and 79.**

**SO ORDERED.**

**Dated:    New York, New York**
**           January 20, 2014**          _____/s/_____
                                            **John G. Koeltl**
                                    **United States District Judge**

                                23